# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# COLUMBIA DIVISION

| | | |
|---|---|---|
| **MICHAEL D. WILLIAMS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | No. 1:09-0054 |
| | ) | **Judge Sharp** |
| **MARK HACKER, JESSE** | ) | |
| **STILWAGEN, THOMAS WALLACE,** | ) | |
| **CHERRY LINDAMOOD, JOHN** | ) | |
| **FERGUSON,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM

Pending before the Court is a Report and Recommendation (Docket No. 92) from the Magistrate Judge which recommends that Defendants' Motion to Dismiss and for Summary Judgment (Docket No. 76) be granted with respect to the claims against all Defendants except Mark Hacker ("Hacker"). Plaintiff, who is proceeding *pro se*, has filed Objections (Docket No. 95) to the R & R.

## I. FACTUAL BACKGROUND AND PROCEDURAL POSTURE

This federal civil rights litigation arose after Plaintiff was severely beaten by fellow inmates at the South Clinton Correctional Center ("SCC") in Clifton, Tennessee on August 15, 2008. Earlier that day, Plaintiff was found by correctional officers to have cuts and scratches on his face, and was escorted by Hacker, the Unit Manager, to the infirmary.

The parties' versions of what happened after Plaintiff was taken to the infirmary is aptly summarized in the R & R as follows:

. . . Plaintiff alleges that at this time he informed Defendant Hacker his injuries arose

1

from an assault in his cell by rival gang members. Defendant Hacker maintains that Plaintiff never mentioned an assault, despite Hacker's repeated inquiries, and instead claimed to have slipped on water in his cell and hit his head on his bunk. Defendant Hacker prepared an "Accident/Incident/Traumatic Injury Report" which is a standard report made whenever an employee, inmate, or visitor has an accident or suffers an injury at SCCC. According to the report and Defendant Hacker, Plaintiff wrote that he "Slipped in cell. Water on floor. Hit bottom bunk" in the section entitled "Subject's Version" and also signed the report. Plaintiff disputes that he ever told Defendant Hacker that he slipped on the floor or filled out or signed the accident report and maintains that he repeatedly informed Defendant Hacker that we was attacked by gang members while in his cell.

After receiving treatment, Plaintiff was escorted back to his housing unit ("Columbia-A") within the facility but was not placed under any special protection. At approximately 3:30 pm, Plaintiff was involved in an incident with other inmates within his housing unit; Plaintiff alleges he was being chased by fellow inmates but Defendant Hacker states that it was the Plaintiff who was observed chasing other inmates. Regardless, following the incident, Plaintiff was moved to a different housing unit ("Discovery-B") within the facility at approximately 5:00 pm. Plaintiff alleges that, once inside the alternate housing unit, he was able to secure himself inside a cell. Plaintiff further alleges inmates gained access to the Discovery-B unit in order to further assault him but were unsuccessful.

At approximately 6:30 pm, Defendant Stilwagen instructed Defendant Wallace to open the door to the Plaintiff's cell in order to allow an inmate assigned to the cell to enter. As soon as the cell door opened, Plaintiff ran from the cell to the front door of the housing unit where he was immediately attacked by surrounding inmates. Defendants Stilwagen and Wallace, then the only two officers in the immediate area and outnumbered by inmates, gave verbal commands to the inmates to cease the attack. Defendant Wallace called for assistance in breaking up the assault, which ended after assistance arrived and approximately two minutes had passed. Plaintiff Williams suffered life-threatening injuries as a result of the attack and was flown to Vanderbilt Medical Center for further treatment.

(Docket No. 92 at 3-4) (internal citations to the record omitted).

In his Amended Complaint, Plaintiff sues Defendants under 42 U.S.C. § 1983 for the alleged deprivation of his "constitutional civil rights" because "they failed to prevent the injuries he sustained which resulted from gang violence." (Docket No. 44 at 5). As indicated, the Magistrate Judge recommends dismissal of Plaintiff's claims against all Defendants, except Hacker. Plaintiff

objects, but only to the extent the Magistrate Judge recommends dismissal of the claims against Defendants Lindamood and Stilwagen.

## II. **LEGAL DISCUSSION**

Because the R & R deals with a dispositive motion, this Court's review is *de novo.* Fed. R. Civ. P. 72(b). Having reviewed the entire record, and having considered Plaintiff's Objections to the R & R, the Court accepts the recommended dismissal of Plaintiff's Amended Complaint as to Defendants Thomas Wallace, Cherry Lindamood ("Lindamood"), and John Ferguson for the reasons cogently explained in the R & R. The Court also agrees with the Magistrate Judge that genuine issues of fact exist as to whether Hacker violated Plaintiff's constitutional rights, and summary judgment as to him will be denied. However, the Court disagrees with the recommended dismissal of the claim against Stilwagen, and summary judgment as to him will also be denied.

Plaintiff objects to the recommended dismissal of Lindamood because Lindamood, as warden, was responsible for security, allegedly lax security allowed gang members to enter the pod and assault plaintiff, and, therefore, Lindamood is responsible for the assault. This is a faulty syllogism for purposes of Plaintiff's claims against Lindamood "[b]ecause § 1983 liability cannot be imposed under a theory of *respondeat superior*[.]" Grinter v. Knight, 532 F.3d 567, 575 (6th Cir. 2008). Rather, "personal involvement is required," meaning, "'[a]t a minimum, . . . that a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate.'" Id. (quoting, Bellamy v. Bradley, 729 F.2d 416, 421 (6th Cir. 1984). Plaintiff makes no such showing in this case.

Plaintiff also argues that "the evidence is clear that there was a breakdown in the security of the institution" and that "the warden has the burden of ensuring that all officers are trained

adequately to established security protocol." (Docket No. 95 at 2). Though not specifically pled, this sounds like a failure to train claim, but, to succeed on such a claim, a plaintiff must show that: "1) the [defendant's] training program was inadequate for the tasks that officers must perform; 2) the inadequacy was the result of [defendant's] deliberate indifference; and 3) the inadequacy was closely related to or actually caused the injury." Ciminillo v. Streicher, 434 F.3d 461, 469 (6th Cir. 2006). "Allegations that a particular officer was improperly trained are insufficient to prove liability, as are claims that a particular injury could have been avoided with better training." Sova v. City of Mt. Pleasant, 142 F.3d 898, 904 (6th Cir. 1998).

All Plaintiff argues in relation to training is that, due to "negligence," a second-shift correctional officer "who worked the Columbia Gate"[1] was not at his assigned post, thereby allowing inmates to leave the Columbia Unit and enter the Discovery Unit where the attack occurred. This single incident is insufficient for Section 1983 liability. See, Harvey v. Campbell County, 2011 WL 1789955 at *10 (6th Cir. May 10, 2011) (citation omitted) (liability based on single episode is only appropriate where there is a showing of "'a complete failure to train . . . , training that is so reckless or grossly negligent that future . . . misconduct is almost inevitable or would properly be characterized as substantially certain to result'"). Besides, "allegations of mere negligence will not sustain an action under § 1983," and "the plaintiff must prove the culpable mental state applicable to the underlying constitutional right." League of Women Voters v. Brunner,

---

[1] Plaintiff asserts in his Objections that his efforts to identify this correctional officer have proved fruitless, and that Defendants claim they cannot locate the documents which would indicate who was on post the evening of the attack. Plaintiff argues "[t]hese actions fall on the shoulders of the warden and for these reasons Defendant Lindamood should not be allowed to be dismissed from this action." (Docket No. 95 at 63). Whatever difficulties Plaintiff may have encountered during the discovery process in this case simply does not go to the issue of whether Lindamood was responsible for a constitutional deprivation on August 15, 2008.

4

548 F.3d 463, 476 (6th Cir. 2008). Plaintiff's claim against Lindamood will be dismissed.

Plaintiff also objects to the recommended dismissal of his deliberate indifference claim against Stilwagen. "An official is deliberately indifferent if he or she 'knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of harm exists, and he must also draw the inference.'" Bishop v. Hackel, 636 F.3d 757, 766-67 (6th Cir. 2011) (quoting, Farmer v. Brennan, 511 U.S. 825, 837 (1994)). "Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence . . . and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." Farmer, 511 U.S. at 842. Further, a court must "evaluate the liability of each [Defendant] individually." Bishop, 636 F.3d at 767.

Defendants lump together Plaintiff's claims against Stilwagen and Wallace. They argue the attack "was sudden and without warning, and that once the assault began Jesse Stilwagen and Thomas Wallace took reasonable steps to remove the risk of harm to Plaintiff." (Docket No. 77 at 9).

The Court has no quarrel with Defendants' contention that Stilwagen and Wallace did what they could once the assault began. In this regard, the Court agrees with the following observations from the Magistrate Judge:

> . . . [G]iven the suddenness of both [Stilwagen's] exit from the cell and the ensuing attack, there appears to be no way either defendant could have prevented the harm once Plaintiff left the cell. Further, the decision of the defendants to wait in assisting Plaintiff appears reasonable. Outnumbered by the attacking inmates, who possessed weapons, defendants took "reasonable measures" by radioing for help and giving verbal commands to cease the attack . . . Again, given the suddenness of the incident, it appears that these defendants acted reasonably in waiting to engage the attacking inmates physically. Additionally, Defendants' limited knowledge of the

5

events leading to this attack further justifies their decision-making before and during the attack.

(Docket Entry No. 92 at 8-9).

However, the Magistrate Judge went on to conclude that Stilwagen's and Wallace's "limited knowledge of the events leading to this attack further justifies their decision-making before and during the attack." Id. at 9. Although the Court agrees with this statement as it pertains to Wallace, the Court finds that there are genuine issues of material fact as to what Stilwagen knew when he directed Wallace to open the door to Plaintiff's cell.

In moving for summary judgment on the claims against Wallace and Stilwagen, Defendants argue:

> At no time prior to this incident had Plaintiff expressed to Wallace that he believed his health or safety was a risk from other inmates. Undisp. Fact No. 24.[2] Thus Wallace had no reason to believe that Plaintiff's health or safety was at risk from other inmates.
>
> Because there was no knowledge that Plaintiff was potentially at risk of attack and because the assault was sudden and without warning, the Court should find that Plaintiff cannot establish that Stilwagen or Wallace ignored a risk to Plaintiff's safety. Without making this showing Plaintiff's deliberate indifference claim should fail.

(Docket No. 77 at 10).

Defendants' argument assumes as a given that Stilwagen had no knowledge as to why Plaintiff was moved from the Columbia Unit. It is not supported by a declaration from Stilwagen, nor is it supported by "Undisputed Fact No. 24" which merely indicates that Plaintiff did not express to "Hacker or Wallace that he believed his health or safety was a [sic] risk from other inmates." (Docket No. 78). The declarations upon which "Undisputed Fact No. 24" is based are those of

---

[2] "Undisp. Fact No. 24" is a reference to "Defendants' Statement of Material Facts No. 24."

Hacker and Wallace, neither of whom says anything about what Stilwagen knew or did not know. In fact, the only mention of Stilwagen is contained in Wallace's declaration wherein he states Stilwagen instructed him to open Plaintiff's cell door, and Stilwagen was the only other correctional officer in the vicinity when the assault began. (Docket No. 80, Wallace Decl. ¶¶ 2 & 10).

For his part, Plaintiff has submitted his own declaration in which he claims Stilwagen told him that Hacker had instructed Stilwagen to move Plaintiff to the Discovery Unit. (Docket No. 90, Pf. Decl. ¶ 9).[3] Once moved, Plaintiff claims Stilwagen came to check on him on several occasions, and Plaintiff "made a mental note" of the fact that Stilwagen remained in the Discovery Unit though the 6:00 shift change. (Id. ¶¶ 11 & 13). Plaintiff also claims that, during this time, several inmates from other pods made their way into the Discovery Unit, and those inmates attempted to enter his cells by using "keys that belonged to other cells." (Id. ¶ 13).

In opposing dismissal, Plaintiff argues that the inferences to be drawn from the evidence is that Stilwagen was aware of the very real possibility of an assault. After all, once Hacker realized that Plaintiff may be at risk, he instructed Stilwagen to move Plaintiff to the alternative housing unit; and, one would expect that some explanation would have been given to Stilwagen as to the reason for the move.[4] Further, Stilwagen made repeated efforts to check on Plaintiff's well-being, and Stilwagen remained in the Discovery Unit, even though (Plaintiff claims) Stilwagen's zone of responsibility was elsewhere.

Given the sparse evidentiary record in relation to Stilwagen, the Court cannot say that the

---

[3] In his declaration, Hacker admits that he ordered a correctional officer to move Plaintiff, but does not identify that officer. (Docket No. 79, Hacker Decl. ¶ 11).

[4] Although it is not in his declaration, Plaintiff also contends that Stilwagen was one of the officers who broke up the original ruckus in the Columbia Unit.

inferences Plaintiff seeks to draw are unreasonable. If, as Plaintiff claims, there were several inmates milling about and trying to get into his cell, and if, as Plaintiff claims, Stilwagen was aware that Plaintiff was moved to the Discovery Unit because other inmates were intent on doing him serious bodily injury, then a jury could conclude that Stilwagen knew that there was a substantial risk of harm to Plaintiff when he opened the cell door in order to allow another inmate to enter the cell.[5]

Admittedly, the deliberate indifference claim against Stilwagen is a close question. However, to prevail on a motion for summary judgment, it is incumbent upon a defendant to show that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law." Fed. R. Ci. P. 56(c). "In considering such a motion, the court views the evidence in the light most favorable to the non-moving party and draws all reasonable inferences in favor of the non-moving party." Ziegler v. Aukerman, 512 F.3d 777, 781 (2008). Moreover, "[t]he generous summary judgment standard is further relaxed when a petitioner proceeds *pro se.*" King v. Zamiara, 150 Fed. Appx. 485, 491 (6th Cir. 2005). Having considered the record, the Court concludes that Defendants have not met their burden of showing the absence any genuine issue of material fact as to Defendant Stilwagen.

### III. CONCLUSION

On the basis of the foregoing, the Court will enter an Order accepting in part and rejecting in part the R & R. The Court will grant Defendants' Motion to Dismiss and for Summary Judgment as to all claims against the Defendants, except Plaintiffs' claims against Defendants Hacker and

---

[5] While it may have been prudent for Plaintiff to remain in his cell, Plaintiff contends he attempted "to run to escape the onslought [sic]." (Docket No. 90, Pf. Decl. ¶ 15).

Stilwagen.  Finally, the Court will overrule Plaintiff's Objections to the extent that he objects to the dismissal of Defendant Lindamood.

*/s/ Kevin H. Sharp*
_____
KEVIN H. SHARP
UNITED STATES DISTRICT JUDGE